IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

```
                                 *
OLETA K. GRAHAM
                                 *
     Plaintiff,

v.                               *     CIVIL NO.: WDQ-04-2391
PRINCE GEORGE'S COUNTY,
MARYLAND
     Defendant.                  *

*     *     *     *     *     *     *     *     *     *     *     *     *
```

MEMORANDUM OPINION AND ORDER

Oleta Kay Graham sued Prince George's County, Maryland, (the "County") for unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII")[1] and the Age Discrimination in Employment Act ("ADEA")[2]. Pending is the County's motion for summary judgment. For the following reasons, the County's motion for summary judgment will be granted.

I.    BACKGROUND

Graham, a 60-year old Caucasian woman, has worked for the County for 27 years. *See* Complaint at ¶¶ 3,8. In 1980, she began working for the Office of Emergency Management ("OEM"), a

---

[1]42 U.S.C. §§ 2000e *et seq*. (2005).

[2]29 U.S.C. §§ 206 *et seq*. (2005).

1

division of the County's Fire Department.  *See* Plaintiff Opp. Exh. 1 at p. 13.  Graham initially worked as an Administrative Aide and was subsequently promoted to Community Developer.  *See id.* at p. 38.  Her salary was approximately $68,000.  *See id.* at p. 261.  As a Community Developer, she received outstanding performance evaluations and obtained numerous emergency management training and certifications. *See id.* at 51-52; 54-58; *See also* Plain. Opp. Ex. 6.  In this position, Graham worked closely with other

emergency management groups.  *See* Plain. Opp. Exh. 5.

In July 2001, Reginald Parks, an African-American male, became the Director of OEM. *See* Plaintiff Opp. Exh. 1 at p. 95. Shortly after his arrival, Parks gave Graham the working title of Deputy Director.  *See id.* at p. 96.  Graham, however, retained her classification of Community Developer. Salaries are determined by an employee's classification and grade, not working title.  *See* Def. Mot. Summ. J. Exh. 3.  Graham, therefore, neither received nor expected a pay increase.  *See* Def. Mot. Summ. J. Exh. 1 at pp. 36-37; 96-97.

In addition to the formal evaluation process, on several occasions, Parks informally praised Graham's performance. *See* Plain. Opp. Ex. 5.  Although Parks and Graham

2

had a seemingly good working relationship, Graham became upset when Parks occasionally reprimanded her. For example, in October 2001, Parks called her into his office and asked the Plaintiff why she had laughed at the former OEM director; the Plaintiff became offended, cried and left the office. *See* Plain. Opp. Exh. 1. at pp. 124-129.

In May 2002, Parks was informed by his supervisors that the Plaintiff could not be reached after an Emergency Operations Center ("EOC") was activated.[3] Parks informed her that her absence was unacceptable and discontinued using her as his primary point of contact. *See id*. at p. 141. In February 2003, Parks again could not reach the Plaintiff when the EOC was activated. He sent the Plaintiff an email entitled "Disappointed and Frustrated" which provided in pertinent part,

"You have made it habit [sic] of not being reachable after hours and on weekends...Your late, if at all arrivals, to the EOC have not gone unnoticed by the administration and volunteers that you are supposed to supervise. I am now questioning your dedication to this office."

---

[3]The OEM operates the EOC when there is a disaster that requires more than one county to respond. Activation requires the OEM staff to physically set up the computer and telephone communications. *See* Plain. Opp. Exh. 1. at pp. 68-70.

*See* Def Mot. Summ. J. Exh. 1. Attachment 11.

After each reprimand, Parks would stop speaking to Graham; he would, however, respond to her job-related questions. *See* Def Mot. Summ. J. Exh. 1. at pp. 173, 177, 178, 240.

On several occasions, Graham told Parks she wanted a promotion. *See* Plain Opp. Ex. 1 at pp. 210-212. Deputy Fire Chief Ronald Blackwell, as the appointing authority of the County's Fire Department, is the only person capable of promoting employees within the OEM. *See* Def. Mot. Summ. J. Exh. 4. at ¶¶ 3-4.  Parks told her he lacked authority to grant promotions. *See id.*  He did, however, encourage her to seek available positions in other counties. *See* Def. Mot. Summ. J. Exh. 6.

In December 2002, Calvin Hawkins, an African-American male, was transferred to the OEM from the Office of the County Executive. *See id.* at ¶ 8.  Hawkins appears to be substantially younger than Graham. *See* Def. Mot. Summ. J. Exh. 6.  Chief Blackwell appointed Hawkins as an Administrative Specialist and Parks gave him the working title of Deputy Director. *See* Def. Mot. Summ. J. Exh. 4. at ¶7.  Hawkins did not receive a pay increase for this appointment. *See id.* at ¶9. He retained his previous $80,000 annual salary. *See* Def. Mot. Summ. J. Exh. 3.

4

Paula Burr, an African-American female attorney, was also transferred to the OEM.  *See* Def. Mot. Summ. J. Ex. 11. Burr appears to be substantially younger than Graham. *See* Def. Mot. Summ. J. Exh. 6.   Burr previously worked in the State's Attorney Office as a Senior Advisor.  *See* Def. Mot. Summ. J. Ex. 11. at pp. 18, 20.  She was appointed as an Administrative Specialist by the Chief Administrative Officer.  *See* Def. Mot. Summ. J. Ex. 9 at ¶5. Her annual salary is $80,000-$90,000. *See id.* at ¶6.

In March 2003, Fred Thomas, Public Safety Director, told Parks that Graham would be transferred to another office. *See* Def. Mot. Summ. J. Ex. 3.  Shortly after Graham was told of the transfer, Thomas was fired.  *See id.*  Parks then told Graham that her transfer was cancelled.  Graham, however, insisted on the transfer and was transferred on March 17, 2003. *See* Def. Mot. Summ. J. Ex.1 at pp. 168-169.

On July 24, 2003, Graham filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC"). The EEOC subsequently issued Graham a right to sue letter.  On July 26, 2004, Graham initiated this suit alleging race, sex, and age discrimination.

## II. LEGAL DISCUSSION

A.   Motion for Summary Judgment

    1. Standard of Review

    Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  Thus, "the judge must ask ... whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

    The court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Electric Industrial Company v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), but the opponent must produce evidence upon which a reasonable fact finder could rely. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  The mere existence of a "scintilla" of evidence is not sufficient to preclude summary judgment. *Anderson*, 477 U.S. at

252.

2.   Title VII and ADEA

Graham contends that the County's actions were based upon her sex, race and age.

Title VII provides that it "shall be an unlawful employment practice for an employer... to discriminate against any individual with respect to her....terms, conditions, or privileges of employment, because of such individual's race or sex...." 42 U.S.C. § 2000e-2(a).  Under the ADEA, it is unlawful for an employer...."to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to her compensation, terms, conditions or privileges of employment, because of such individual's age."  29 U.S.C. § 623 (a)(1).  The legal analysis for Title VII and the ADEA are identical.  *See EEOC v. Warfield-Rohr Casket Co.***,** 364 F.3d 160, 163 (4th Cir. 2004).

(A)  Hostile Work Environment

Graham contends that she was subjected to a hostile work

environment.  Under the hostile work environment theory, the harasser's conduct "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an

7

intimidating, hostile, or offensive working environment." *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 65 (1986).

The elements of a hostile work environment claim are as follows: (1) that the employee was harassed because of her [race, sex and age]; (2) that the harassment was unwelcome; (3)that the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) that some basis exists for imputing liability to the employer. *Hartsell v. Duplex Prods., Inc.*, 123 F,3d 766, 772 (4th Cir. 1997).

Graham has failed to establish a prima facie case because she has not met the third element.

Considering whether the harassment was sufficiently severe or pervasive, the Court must look at all the circumstances to determine whether a work environment is hostile or abusive. These circumstances include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 242 (4th Cir. 2000).

Graham offers several instances to establish an abusive environment. None of these instances, however, meets the "severe and pervasive" requirement. Graham contends that Frank's verbal and written reprimands were sufficiently severe and pervasive to

8

constitute harassment.  Assuming arguendo that these incidents were more than episodic, *Von Gunten v. State of Maryland*, 243 F.3d 858, 870 (4th Cir. 2001) (finding no hostile environment where incidents occurred episodically over a period of a year and a half), an  employee's discontent with a reprimand does not equal harassment.  *See Lacy v. Amtrak*, No. 98-1914, 2000 U.S. App. LEXIS 2933, slip op. at *11,(4th Cir.  Feb. 28, 2000)(*citing Gross v. Burggraf Constr. Co.,* 53 F.3d 1531, 1545-46 (10th Cir. 1995)).  Accordingly, Park's reprimands based on perceived deficiencies in Graham's work or behavior provide no evidence that she was subjected to a hostile work environment.

Graham also claims that Parks spoke to her harshly or in many instances, did not speak to her at all.  Although Frank's harsh tone or failure to speak to the Plaintiff created an unpleasant environment, Title VII is not a general civility code.  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  There is no evidence that this behavior unreasonably interfered with her performance.  Graham concedes that Parks spoke to her regarding work-related issues and that despite his behavior, she continued to excel professionally.  *See* Def Mot. Summ. J. Exh. 1. at pp. 178, 240; Exh. 6 at p.6.

The Plaintiff also contends that her transfer from the OEM supports her hostile work environment claim.  The

Plaintiff, however, requested the transfer.  *See* Def Mot. Summ. J. Exh. 1. at Dep. Exhs. 16, 17.  She, therefore, cannot provide this as a basis for recovery.

Accordingly, the Plaintiff's hostile work environment claim will fail.

(B)  Failure to Promote

Graham contends that the County's failure to promote her to the higher paying Deputy Director position was discriminatory.

To establish a prima facie case of failure to promote, Graham must show: (1) she is a member of a protected group; (2) she applied for the position; (3) she was qualified for the position; and (4) she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination.  *See Honor v. Booz-Allen & Hamilton, Inc.,* 383 F.3d 180, 189 (4th Cir. 2004).

Even assuming that Graham could establish a prima facie case, only an inference of discrimination would be created. The employer can rebut this presumption by articulating a legitimate, nondiscriminatory reason for the alleged adverse employment action.
*See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000).  The plaintiff always bears the ultimate burden of

proving that the employer's articulated reasons were not its true reasons but were a pretext for discrimination. *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (*citing Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

The County has offered legitimate nondiscriminatory reasons for not selecting Graham for these positions.  Unlike Graham, Hawkins has years of experience with community outreach and relations. *See* Def Mot. Summ. J. Exh. 4 at ¶8; Exh. 8 at p. 10.  The County, therefore, hired Hawkins to head its Community Emergency Response Training program.  Similarly, Burr has specialized experience. *See* Def Mot. Summ. J. Exh. 11.  Although Burr does not have emergency management experience, the County valued her legal experience. *See* Def Mot. Summ. J. Exh. 9 at ¶5. In addition to other tasks, Burr reviews legal contracts and performs legal research. *See* Def Mot. Summ. J. Exh. 11 at pp. 7-8.

Graham has provided no evidence that the County's proffered reasons were pretextual.  In support of her claim, Graham relies solely upon the fact that she was successfully performing as a Deputy Director at the time of the Hawkins and Burr appointments.  Graham, however, has failed to produce any evidence other than her assertion that she is more qualified than

Hawkins and Burr.  *See Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 526 (4th Cir. 2003)("unsupported speculation is not sufficient to defeat a summary judgment motion").

      (C)      Wage Discrimination

To establish a prima facie case of wage discrimination, a plaintiff must demonstrate that she is a member of a protected class and that the job she occupied was similar to higher paying jobs occupied by persons outside the class. *See Brinkley-Obu v. Hughes Training, Inc.,* 36 F.3d 336, 343 (4th Cir. 1994).

The Plaintiff's claim fails because she has not established that she was similarly situated with Hawkins and Burr.

As stated above, although the three employees shared the "working title" of Deputy Director, they held different classifications with different job descriptions.  Moreover, salaries are determined by an employee's classification and grade, not working title.  *See* Def. Mot. Summ. J. Exh. 3.  Therefore, the Plaintiff's working title of "Deputy Director" does not establish a wage claim.

Accordingly, the County's motion for summary judgment will be granted.

III. CONCLUSION

For the reasons discussed above, the County's motion for summary judgment will be granted.


July 19, 2005                   _____/s/_____
Date                            William D. Quarles, Jr.
                                United States District Judge